S13A0474. HOEHN v. THE STATE.
(744 SE2d 46)

NAHMIAS, Justice.

Appellant Joseph Hoehn was convicted of malice murder and possession of a firearm during the commission of a crime relating to the shooting death of Robert Congleton. He appeals, arguing that the trial court erred in failing to sustain his objection after a juror directly asked a witness a question and in denying his claim that the felony murder count of the indictment was defective because it failed to allege the elements of the underlying felony of aggravated assault. We affirm.[1]

---

[1] The crimes occurred on August 7, 2009. On October 20, 2009, a Richmond County grand jury indicted Appellant for malice murder, felony murder based on aggravated assault, and possession of a firearm during the commission of a crime. On March 10, 2010, after a trial, the jury found Appellant guilty on all counts. On April 12, 2010, the trial court sentenced him to life in prison on the malice murder conviction and five consecutive years for the firearm offense. The

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Appellant and Mr. Congleton had been friends for many years, and Mr. Congleton had invited Appellant, who was estranged from his family and living in a shelter, to live with Mr. Congleton and his family about 13 years before the shooting occurred on August 7, 2009. At about 9:00 p.m. that night, Appellant was very intoxicated when he came home. Mr. Congleton and his wife, Michelle, were in the den; their 13-year-old daughter, August, was in her bedroom. Appellant was being obnoxious and loud and started playing roughly with the Congletons' new puppy. Ms. Congleton asked Appellant to stop several times but he did not. Mr. Congleton then told Appellant to go to his room. Appellant yelled a profanity at the Congletons and said he was moving out the next day. He went to his room, slammed the door, and began playing music full blast. The Congletons then went to Appellant's bedroom, and Mr. Congleton knocked on the door several times. Ms. Congleton heard a gunshot, and Mr. Congleton fell to the floor with blood coming from his head; he had suffered a fatal gunshot wound to the head. Ms. Congleton began screaming, and August came out of her room. They ran to a neighbor's house, where they called 911.

A few minutes later, officers entered the Congleton residence and arrested Appellant after having to break down his bedroom door because he did not respond over the loud music that was still playing. A .38-caliber revolver was found on the floor of the room. There was a gunshot hole in Appellant's bedroom door, and forensic evidence indicated that the gun was fired at a slight downward angle.

An officer testified that, after leaving the crime scene, he attempted to interview Appellant at around 1:10 a.m., but Appellant was too intoxicated. The officer did speak with Appellant about 7:00 a.m. Appellant said that he drank heavily the night before and became angry when Mr. Congleton sent him to his room. When Mr. Congleton knocked on his door, Appellant got his pistol and fired one shot through the door. Appellant claimed that he had tried to fire above Mr. Congleton's head, but the officer explained that, because Appellant was six inches taller than Mr. Congleton and Appellant said that he fired from shoulder height, he would have been firing directly at Mr. Congleton's head.

felony murder conviction was vacated as a matter of law. On April 19, 2010, Appellant filed a motion for new trial, which he amended on April 20, 2012. On May 2, 2012, the trial court denied the motion. Appellant filed a timely appeal, and the case was docketed to the January 2013 term of this Court and submitted for decision on the briefs.

At trial, Appellant testified that he drank heavily on the night of the shooting and only vaguely remembered arguing with the Congletons. He admitted that the .38-caliber revolver belonged to him, and although he said that he did not remember firing the shot that night, he did not deny doing so. He claimed that he did not intend to kill Mr. Congleton and was mortified when he learned that he had.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. At trial, as an officer testifying for the State was identifying photographs of the crime scene, a juror, without seeking permission from the court, asked, "Is that the weapon?" The officer said that it was. The court overruled Appellant's objection to the juror's asking a question. The officer then testified that the gun was visible in the photograph, but he did not testify further about the gun. Appellant contends that the trial court erred in failing to sustain his objection. He is correct. While "a trial court may receive written questions from the jury and ask those questions which the court finds proper, or allow counsel for either party to ask a testifying witness the questions found to be proper," jurors may not directly question a witness. *Allen v. State*, 286 Ga. 392, 396-397 (687 SE2d 799) (2010). See also *Matchett v. State*, 257 Ga. 785, 786 (364 SE2d 565) (1988) ("[D]irect questions from a juror to a witness are generally not permitted in this state."). Here, the juror improperly questioned the State's witness, and the trial court should have sustained Appellant's objection and struck the officer's answer.

However, it is clear that this error was harmless. See *Matchett* at 786 (holding that an error involving a juror's question was harmless); *Watson v. State*, 264 Ga. App. 41, 43-44 (589 SE2d 867) (2003) (same). The point about which the juror asked was undisputed: the murder weapon was plainly visible in the crime scene photograph, another officer who had investigated the crime scene testified that the gun was found in Appellant's room, and Appellant admitted that the gun belonged to him. In addition, the evidence of Appellant's guilt was overwhelming. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict," see *Lindsey v. State*, 282 Ga. 447, 450 (651 SE2d 66) (2007), and that test is easily satisfied here.

3. The felony murder count of Appellant's indictment charged he "did, while in the commission of the felony of aggravated assault, cause the death of Robert Congleton . . . by shooting him." At the close of the State's case, Appellant argued that the felony murder count was fatally defective in that it did not set forth the method by which the underlying aggravated assault felony occurred, and because there was not a separate aggravated assault charge, the defect was not remedied by another count defining that crime. The trial court rejected this argument, which Appellant contends was reversible error.

Appellant's argument is meritless. See *Lewis v. State*, 283 Ga. 191, 195-196 (657 SE2d 854) (2008) (rejecting the same challenge to an identical indictment); *Stinson v. State*, 279 Ga. 177, 179-180 (611 SE2d 52) (2005) (rejecting the same challenge to an almost identical indictment). Moreover, any issue with regard to Appellant's felony murder count is now " 'moot because [his] felony murder conviction was vacated by operation of law based on his conviction for the charge of malice murder.' " *Young v. State*, 290 Ga. 392, 398 (721 SE2d 855) (2012) (citation omitted). Accord *Nicely v. State*, 291 Ga. 788, 795 (733 SE2d 715) (2012) (holding that any defect in an aggravated assault count that failed to specify the weapon or instrument that the defendant allegedly used to assault the victim was harmless because he was convicted and sentenced only for felony murder based on cruelty to a child, with the counts for aggravated assault and felony murder based on aggravated assault being merged into that conviction).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Robbin Shipp*, for appellant.
*Ashley Wright, District Attorney, Charles R. Sheppard, Madonna M. Little, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.